5180052. Counsel ready. You may proceed. Thank you, your honor. May it please the court, for the record, my name is Curtis Blood, I represent Mary Blair, Madison County Judge. This case involves a property disposition, and as the trial judge noted in the order appealed, it's all about characterizations, marital or non-marital, and about transmutation and contribution. And that's pretty much what we're here about today. Full of marriage for each, no children, the trial court tried to divide the marital property evenly and didn't award attorney's fees, so it looks like the trial court was just following the plan of figure out what's marital and what's not, award the non-marital and split the marital, which makes sense, but that seems to be the plan. There's four claims that fall together in my main brief, and three of them concern what is marital property, and the fourth one is math error, and I'm going to take that first, and there's one of the marital property claims that's probably best suited to paper, I'll touch on that and then get to the two other ones, but I think I can be of some help to the court on that. I want to talk about the standard of review. We don't contest any facts found by the trial court other than dispositions marital or non-marital, that's it. We don't contest any found facts. Well, isn't the math error issue a contest of facts? Okay, well, if that's an exception, I'll let that be an exception, Your Honor. Well, I think the easiest question, would you explain to us, it looks to me like the parties agree on the math. Well, and I think all that needs to be said is, would you please honor our agreement? No, okay. I think we've got that settled. No, we've got it on the map. Okay, we'll sacrifice that. The second one, if we go to it, which is actually the last one in the brief, is a set-off. According to the judge, it's a set-off. Like I say, you're just best off verifying what we've said on the record. We don't have a dispute as to the effect of what the judge said, but we have a dispute, believe it or not, as to what the judge said. So, and it's written down, so all you need to do on the issue number four, on the final issue, is just to see who's right. And I'd shout very loudly that I am, but I think the court's more than able to figure out who's correct and decided on that. And with no further ado, not to waste your valuable time, I'd like to get on to the savings and loan accounts issue, which is the first issue in the brief, and the reason it's there is it's the most money. Richard's company was guaranteed sewer and drain. It's a solely owned proprietorship. It's not a corporation. It's no kind of a legal entity. It's not a partnership. It's just a doing business. And it had two savings and loan deposit accounts. One was a passbook savings and the other was a check-in. The circuit court found that the fixtures and tools and vans and equipment of the company were Richard's non-merit property. And there was no problem with that. We agreed with that. Then the circuit court found, and here's the problem, that the savings and loan accounts were Richard's non-merit property. And Mary raised that in a post-judgment motion, but the circuit court issued a four-sentence post-judgment motion that did not comment on that at all. It is told, I think, that on Avalee's brief, page two, seven lines from the bottom, which is just perfectly halfway down the last paragraph on page two, Richard admits that the money in that account would be, quote, considered income as merit of property once received. Okay, we agree on that. If he took it out of his business account, now it's merit of property. All right. All right. Now, this is straight Section 503 of the Act of the Marriage and Dissolution of Marriage Act. Now, what happens then if he doesn't? What about money in those accounts makes it non-merit of property? And we would submit nothing. The best way to look at it is if you look at the cases where spouses were and the company had money, the question was, or even partnerships, the question is whether that spouse had access to the funds, whether that spouse could say, disperse the funds. Because if the spouse could say disperse the funds to the owners, which is me, then it's merit of property. If not, not. And we've cited three cases on that point. So what, in this case, it would seem to be less of a hedge between merit or non-merit of property. He's got the money. It's in a doing business account, doing business as account, with his company's, with his doing business name on the checks, but he has access. I mean, he makes, and he'd live it. He's cross-examined on it. He's the one that decides what happens to that money. If a dollar, at the end of the day, if one dollar is in that account, it's because he decided to leave it there. And if it's out, it's because he decided to take it out. He has entire control over every penny in those accounts. Now, under Section 503 of the Act, property received during marriage, after the marriage, is merit of property. These funds meet that description. There's nothing about the fact that they were in accounts with a business heading on the top that takes them out of that general rule, Section 503 rule. Simple as that. The last thing I want to talk about is, again, Section 503 claim, is the third of the four in the briefs, and that is the maintenance from Mary's prior marriage. I don't know how it came to pass, the record does not say, but somehow, during this marriage, Mary was receiving periodic maintenance from a previous marriage. And the testimony is undisputed that it was going into an account, a joint account. $138 and some odd cents every two weeks into that account. And there came a day when Mary said to herself, I'm going to take that money out. And she calculated, according to her testimony, how much money it was, and it came out to $10,731. And withdrew it from the account, bought a certificate of deposit with it, and the trial court held that that certificate of deposit was marital property. Well, we don't think that's right. If that's right, we'd sure like to hear it from this court. Why? It doesn't make sense. That's something she brought into the marriage. Well, she spent it into a joint account, so is there a presumption that it's a gift to the marriage? Well, there are rules of transmutation. And money that is commingled, mingled, can certainly be transmuted. But Section 503 of the Act goes on to say that if the court finds that a transmutation has occurred, then the court is to order contribution to the contributing estate from the receiving estate. That's straight Section 503. And the judge went through the marital property analysis, but didn't complete the analysis. What about the contribution in Section 503? If it's transmuted, where is her contribution? The court just dropped the ball on the five-yard line, I think. It just didn't explain that. So there's either contribution, or if it's non-marital, she gets it all, if it's contribution, her estate, non-marital estate is reimbursed for half. Well, that's right. That's basically right. She didn't get half of it. That's right. That's her position, yes. And I did a long section on not having found any authority on that. And you would think that somewhere there would be some authority on that, even if not in this State. I mean, it's a Uniform Act, but nothing. So I guess it's first impression for you all. But I think what it comes down to is the goal line is this. This doesn't make sense. It just doesn't make sense that she would come into the marriage with maintenance from previous marriage and that it would be marital property. That would seem to be the epitome of previously owned property. Why did she put it into a joint account? Does the record... I mean, is there evidence on... You would assume she would have kept it in her own account, her name, but then she puts her account with her husband's name on it. That's where you get to the presumption. A joint account, yes. Yeah. I don't think it's a direct deposit. Yeah, and what the thought process was, I sure don't know. Things change, people change, marriages change. I can only guess. Well, in that case, if there's a presumption, then you have a presumption if the money goes in as a gift, and then obviously the marriage fell apart and they got a divorce. You know, does the spouse and child change their mind and say, no, it's my non-marital now, once they've made the gift? Well, Your Honor, but there's still the Section 503 sub-provision that if there's a transmutation in that way, there's got to be contribution to the contributing estate. So either way, I mean, I don't think transmutation is a hog that this Court needs to wrestle. I mean, it's either straight non-marital property or there should have been contribution for it. But it's got to be one or the other, doesn't it? I don't think there's a middle ground under Section 503. Was there an argument that the husband's attorney made that in the statute, you know, maintenance was not listed as an exception? Of course, normally, if you have maintenance, you know, it would terminate, you know, in Illinois, you know, unless you're bi-gremial, terminate in time of remarriage. And that's, I guess, why it's such a first impression issue, as far as I can tell. But whether his lawyer argued that, I cannot say, Your Honor. I'd have to pick up the book and study. And it's a heck of a book. And there's nothing in the record to indicate the nature of this maintenance, whether from the prior marriage, no record of the prior divorce decree, to show whether it's in gross or how the maintenance is characterized? I haven't seen that, Your Honor, no. The only mention of a prior marriage was his prior marriage, which involved the Triad Roadhouse and its disposition. No, I don't even know if it was our most recent prior marriage. I couldn't even tell you that. Spouse's name, no idea how long, don't know when it was supposed to end, no idea. Nothing. Just that it was maintenance. I think the Court has heard me clearly and probably heard a great deal clearly today. I don't need to go on. So I've asked the Court to rule as we've specified in detail in our briefs. Thank you, Your Honor. Thank you, Counsel. May it please the Court, Counsel. My name is Janie Lintnett, and I will accept the appellee, Richard Blair. In following Mr. Blood's order of addressing the issues in the briefs, I'm going to start with the fourth issue. And just to make a brief point, Mr. Blood and the appellant, Mary Blair, stated that the trial court erred by failing to reimburse the marital estate by the sum of the $16,993. In my brief, I state that the trial court analogized those funds with the repayment by my client, Richard Blair, of the loan owed to Mary's father during the marriage. Specifically, the trial court states that the trial court states in its judgment that the payments are analogous to payments made from the marital funds of the monies paid to buy out Linda Blair's interest in the Triad Road property. Mr. Blood, in his reply brief, stated that my argument was incorrect because rather than canceling out that $16,000 figure with the $15,000 that Mr. Blair used to pay off the loan to Mary's father, the court applied it to the marital interest in the Triad Road property. Well, in the order that was entered on the motion to reconsider, the court decided that the marital estate would actually be reimbursed by the total marital contributions made on the Triad Road property in the amount of $75,000. So at one point in the judgment, the court did state that any marital funds used for the Triad Road property would be canceled out against that $16,000 figure. When the court then decided to reimburse the marital estate by the marital contributions to the Triad Road property without explicitly stating it in its order, the $15,000 was canceled out by the $16,000. It's a little bit difficult to follow in just the judgment, but the court clarifies those marital contributions in the post-judgment order. And so, essentially, it would be improper and a waste of judicial autonomy to send this back to the circuit court to clarify and to state basically what it's already done. Counsel, listen. So the original judgment, as I recall, actually there was an omission. The court had left a blank and that the order on the motion to reconsider, that's where this language was inserted that you just addressed. But as I recall, there was an omission actually in the initial judgment and that this order on the motion to reconsider actually addressed that omission. Correct, Your Honor. And the omission was actually to my client's detriment. Initially, he wasn't really given credit for the $15,000 that he repaid to Mary's father. But when the trial court did correct just taking separately the marital interest in the Triad Road property, we still have these two figures, the $16,000 marital amount and the $15,000 amount. Essentially, those cancel out. And I do believe that we still get to an equitable solution based off of that. In regards to the other points argued by Mary in her appellant's brief, specifically, the trial court found and Mary agreed that the guaranteed sewer and drain business was non-marital. The issue is whether the savings and loan accounts are marital or non-marital. Specifically, what we believe is happening here is that Mary is asking for maintenance. Those two savings and loan accounts cannot be considered retained earnings. While the testimony was undisputed that Richard did dip into those accounts for expenditures, that's customary practice for a sole proprietor to do so. What happens in family court and under the Act for Maintenance and Child Support Calculations is those expenditures made from business accounts are considered draws. And draws are considered income. So if Mary actually wanted a stake in those draws or in those expenditures made, she would have had to have requested maintenance, but she didn't. It's improper to call those expenditures retained earnings because those expenditures represent income that is received. In regards to whether Richard actually used solely his personal efforts in the balances of those accounts or the funds that were in those accounts, that is disputed. Mary states in her briefs that all the monies in those accounts were solely earned due to Richard's personal efforts and not anyone else. There is explicit testimony, and I believe it's even in the exhibits that are introduced with the bank statements, that Richard hired regular subcontractors and helpers and he would split job proceeds with them. So all the funds in those accounts were not due to his sole efforts. Further, there was testimony that the balances of those accounts and his income had decreased dramatically due to knee replacement and increase in age. In order for Mary to classify what portion of those funds would be categorized as retained earnings, if that were even applicable here, she would have had to have retained an expert to testify or even introduce any evidence at trial to break down what portion of the accounts went towards his business expenses and what portion of those accounts realized as income to him. And there was actually no evidence introduced for that. In the appellant's brief, Mary does break down, I believe, about a month of expenditures in the account or expenditures out of the account and checks written for tax purposes related to the business. One month does not represent the full picture for the court to determine what would be considered retained earnings, again, if that were even applicable in this case. Mr. Glenn discussed the two cases that were cited in the appellant's brief. I believe he actually cited three. One of them was a Rule 13 holding, but the two that were cited, Joint and Lundahl, both involve and discuss that an expert is necessary to determine what retained earnings are there, if any. The burden would have been on Mary to have that at trial. And not only did they not employ an expert, they also, again, did not go through the bank records to demonstrate what were the expenses out of the account, what were the expenditures. Those all have to be isolated in order to determine if there are retained earnings. Again, because this is a sole proprietorship and not a corporation, we do believe that the idea of even categorizing those accounts as retained earnings is improper. Further, the discussion in the appellant's brief as to the balances of the checking accounts and how much they did or did not grow is misleading because it isolates one year from 2012 to 2013 what the balance was in 2012 to 2013. The parties were married in 2003. In order to understand whether or not there was a significant increase in the value of those accounts, we would need to know what the balance was as of 2003, which, again, would be Mary's burden to produce at trial and put into the record. But none of that evidence was present. For those reasons, we believe that the trial court did not err in finding the savings and loan accounts to be non-marital. In regards to the third issue that Mary raises in her appellant's brief, we believe that the trial court did not err in finding that the $10,731 certificate of deposit was marital. Specifically, Mary asserted at trial that the certificate of deposit, the sums used to purchase that were her maintenance. It's not really possible for her to say that. She received maintenance on a monthly basis. It was directly deposited into, again, a joint account. She easily could have had those funds directly deposited into a sole account, not in Richard's name and only in her name with no other funds being added to it. She chose not to do that. She chose to have those deposited into a joint account. There was extensive testimony about that joint account that the funds were deposited into, and the problem with the argument that Mary makes about there not being any commingling is while it's clear the amount she got every month for maintenance, what's not clear is that there were additional deposits into that account from other sources, from the party's income. Richard would deposit funds into that account from the business when they needed money for certain expenditures, and then there was money coming out of that account regularly. There's no itemization or accounting for the money that was brought out of the account, and that's where even if those maintenance deposits were non-marital, which we don't believe that they were, but even if they were, they've now been commingled and transmuted to marital property. Okay. Counsel, if the Court accepts that argument, what about the contribution argument? At least, you know, Mary's non-marital estate should be half the money she put in. Well, I don't... I have two parts to that. One, I don't think, again, that we can even say half of it would need to be or should be reimbursed because we don't have a clear accounting of the funds that came out of that account. And the funds that came out of that account were used for expenditures for the party, for marital purposes. So essentially, between the time that those deposits started to when they stopped and Mary withdrew the $10,000 figure, the withdrawals from that account could have far exceeded the $10,000 figure. So there has to be a clear accounting if we want to even reimburse Mary's non-marital estate by a certain amount. What about the testimony, Court, that, as I recall, you know, Mary gave a figure and Richard said something like that. You know, there didn't seem to be a dispute about the amounts that were put in. There was no dispute as to how much she got mentioned. It was the same amount every month for a certain period of time. But in regards to the testimony, Mary testified herself that she would have considered or that she considered that joint account to be marital prior to her withdrawing the $10,000 figure. So when we talk about disputed facts and disputed testimony and undisputed testimony, Mary, it was a little bit confusing for her to admit this, but she stated that the week before she withdrew that $10,731 from the joint account, that joint account was marital. So if the account was marital a week before she withdrew the funds, then the $10,731 was marital. And in regards to the statute, the statute cited to you in the brief, Section 503A, provides an exhaustive list of exceptions to marital property. And when counsel talks about how there is no specific, there's no case law that's specifically on point as to whether maintenance is considered marital or not, by the language of the statute, if it's not in Section A, 1 through 8, it's not marital. Sorry, it is marital. And that's the way that we have always applied that statute in terms of categorizing whether certain income or assets are marital or not marital. I understand that generally maintenance does end when a party remarries, and there is nothing in the record as to the origination of this maintenance obligation or why it didn't terminate. But we have had parties agree to continue to pay maintenance even if a party decides to remarry, along with generally pretty complicated settlement agreements and things like that. So if the parties agreed, if Mary and her ex-husband agreed to that, then that's fine, but again, because it doesn't, it's not explicitly in that statute, case law and statutory law has always told us that it's considered marital property. Thank you. Thank you. Thank you, Your Honor. About the standard of review, if you get to the point where you're thinking, other than the math issue, that this is a matter of discretion or manifestly in the evidence, then you're not seeing what our argument is. We're deliberately retreated to where we can do this to know what the trial judge found, except as it is directly opposed to categorization as marital or not marital, we concede. Richard's testimony, except as it's contrary to the judge's findings, we concede. Reasonable inferences to be drawn from what the judge found, we concede. No problem. So if you think that it's not de novo, don't forget, that's our position. We're letting those things go. The only other thing I want to add, and then I'm gone, is Rule 503, I mean Section 503 of the Marriage and Dissolution of Marriage Act. Subparts A and C. A, property acquired after the marriage is marital property subject to exceptions, and it says right in there one of the exceptions is property acquired before the marriage, so it says it two different ways. And then Section C, which says the property is commingled, it can be transmuted, but there must be contribution for it. Subpart C. This Court keeps in mind the standard of review and Section 503A and C, you will not go on. Thank you. Thank you, Counsel for your argument. This Court takes this matter under advisement. We render the decision due course.